Bituminous Casualty Corporation, a Corporation, Plaintiff-Appellant, Cross-Appellee, v. Hartford Accident & Indemnity Company, a Corporation, Defendant-Appellee, Cross-Appellant.

Gen. No. 49,412.

First District, First Division.
November 2, 1964.
Rehearing denied November 23, 1964.

Doyle, Berdelle & Tarpey, and Jerome H. Torshen, all of Chicago (Leo J. Doyle, Jr. and Jerome H. Torshen, of counsel), for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Charles M. Rush, Francis B. Libbe, and John M. O'Connor, Jr., of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a declaratory judgment action brought by plaintiff, Bituminous Casualty Corporation, against defendant, Hartford Accident and Indemnity Company, to determine which of the two insurers is liable to pay the amount of a settlement entered into on behalf of their common insured, Central Engineering Company. Bituminous and Hartford each paid $42,500 to a claimant who was injured at a Central construction site in Moline, Illinois, and stipulated that their respective rights and liabilities would be subsequently determined. In the instant case, the trial court found that coverage was provided to Central by both Bituminous and Hartford, and that their contributions should stand. Judgment was entered accordingly. Bituminous appeals, and Hartford cross-appeals.

Central Engineering Company of Davenport, Iowa, was in the construction business, including road paving, excavation work and steel erection. An occurrence stipulation by Bituminous and Hartford shows that Edward McIntire, a minor, was injured on May 27, 1953, while on 23rd Avenue in Moline, Illinois, as he watched paving operations then being carried on by Central. Twenty-third Avenue was a 2-lane highway, with no sidewalks. The project in-

volved the widening of 23rd Avenue by adding an additional lane of concrete to each side of the paved portion of the road. At the time of the occurrence, work was being done only on the addition to the north edge of 23rd Avenue; work had not commenced at the south edge of 23rd Avenue. Central was the sole contractor connected with the project. At the approaches of Twenty-third Avenue were wooden horses and barricades, on which signs were placed, "Road closed. Open to Contractor's and Resident's vehicles only. Violators subject to fine. (State of Illinois.)" Other signs read, "Road closed. Open to Contractor's and Resident's traffic only."

It is further stipulated that Central knew children had been and were using 23rd Avenue to go to and from school, and that the direct route to the school attended by Edward McIntire was on and along 23rd Avenue. While he was on his way to school on the morning of the occurrence, he stopped on 23rd Avenue to observe the operations of the concrete mixer, crane and bucket and finishing machine, which were being operated on the addition to the existing highway. As he was watching, he saw the bucket moving toward him on the boom and coming closer to him. At the same time he heard a voice coming from the general direction of the cement mixer and finishing machine. This voice said, "Step back." As Edward stepped one step backward on the paved portion of 23rd Avenue, the right wheel of a passing material truck, hired by and operated in behalf of Central, ran over and injured him.

To insure its construction operations, Central maintained a comprehensive insurance program with a number of insurance companies, including Bituminous and Hartford. The Bituminous policy limits were $50,000, and the Hartford policy limits were $100,000. A third insurance carrier had issued a $25,000 policy

244

to the owner of the truck, which was being operated on behalf of Central. $110,000 was paid by the three insurance carriers in settlement of the Edward McIntire claim. Of this amount, the third insurance carrier paid the face amount of its policy ($25,000). As to the balance of $85,000, Bituminous and Hartford each contributed $42,500, with a settlement stipulation as aforesaid.

The Bituminous policy was a "SCHEDULE MANUFACTURERS' AND CONTRACTORS' LIABILITY POLICY." It covered bodily injury "caused by accident and arising out of the hazards hereinafter defined," which include "the ownership, maintenance or use of the premises, and all operations which are necessary or incidental thereto." Under "EXCLUSIONS," the policy does not apply "to . . . automobiles . . . while away from the premises, unless such hazards are specifically declared and described in this policy and premium charged therefor." The word "premises" is defined to mean "(a) the premises designated in the declarations and other premises of which the named insured acquires ownership or which he rents during the policy period, including buildings and structures thereon and the ways immediately adjoining and (b) other places while used by or on behalf of the named insured, . . . *except public ways used in common with others.*" (Emphasis supplied.)

The business address of Central, given in both policies, was "2531 Rockingham Road, Davenport, Iowa." In the Bituminous policy, opposite the printed words "Location of premises," in typewritten words appears "Same and in the States of Iowa and Illinois." This policy also contains a typewritten rider, which specifically describes one of the hazards insured against as "STREET OR ROAD PAVING OR REPAVING, SURFACING OR RESURFACING OR SCRAPING . . . Iowa, Illinois."

245

The Hartford policy was a "COMPREHENSIVE GENERAL AND AUTOMOBILE LIABILITY POLICY." The coverage was "to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, . . . sustained by any person and caused by accident." The policy contained the further provision that "the insurance under this policy with respect to loss arising out of the use of any nonowned automobile shall be excess insurance over any other valid and collectible insurance available to the Insured, either as an Insured under a policy applicable with respect to such automobile or otherwise." A separate endorsement also provided that "the insurance . . . shall . be excess insurance over any other valid and collectible insurance available to the Insured . . . against a loss arising out of a hired automobile . . . ." We note again that it was a "nonowned" automobile involved in the occurrence which led to the settlement.

In the instant action, Bituminous claims that Hartford is liable for the full $85,000, because Bituminous' policy specifically excluded from its coverage the occurrence which gave rise to the claim against Central. Bituminous argues that "Twenty-third Avenue in the City of Moline was at the time of the occurrence a 'public way' used by Central 'in common with others.' Hence, Bituminous did not provide coverage for automobile accidents which occurred thereon," and the "liability falls squarely within the coverage of Hartford's policy."

Hartford denies any liability to Bituminous, and by a counterclaim asserts that Bituminous is liable for its full policy limit ($50,000), because the Bituminous policy covered the risk to the boy, and Hartford's coverage was *excess coverage only.* (Emphasis supplied.) Hartford claims Bituminous

owes it $7500, i. e., the difference between Bituminous' $42,500 contribution and its $50,000 policy limit.

In order to support its contention that 23rd Avenue was a "public way," and that "public ways" have a judicially accepted definition, Bituminous cites numerous authorities. We do not find it necessary to review these general authorities, because they do not demonstrate that the immediate area in which the occurrence took place was meant to be excluded by the Bituminous policy. Our conclusion, determined by reading the policy as a whole, is that the "public way" exclusion does not apply to the factual situation presented here.

The typewritten rider to the policy, enumerating as a hazard covered the "STREET OR ROAD PAVING OR REPAVING, SURFACING OR RESURFACING OR SCRAPING . . . Iowa, Illinois," is an indication that entire construction sites on projects such as the 23rd Avenue widening were intended to be covered by the policy. This interpretation is reinforced by the definition of hazards covered in the following language:

"Division 1. Premises—Operations. The ownership, maintenance or use of the premises, and all operations which are necessary or incidental thereto."

"Premises" is defined, in part, as "other places while used by or on behalf of the named insured . . . ." Inserted in the policy, in typewriting, the location of the "premises" was stated to be ". . . in the States of Iowa and Illinois." These provisions, read together, seem to indicate that an entire construction site area was meant to be covered by the policy, and this, of necessity, would include portions of any "public way" which happened to be part of or immediately adjacent to a Central paving site. Under

247

this interpretation, the policy coverage of Bituminous would include that paved portion of 23rd Avenue on which Edward McIntire was standing when injured by the passing truck.

The area included in a paving operation site depends on many factors and, of necessity, varies according to the facts in each case. It would be incongruous and arbitrary to construe this policy to hold Bituminous not liable if Edward were injured by an automobile while he happened to be standing *on* a "public way" within the construction site area, and to hold Bituminous liable if, by chance, he were standing *alongside* a "public way" within the paving site area.

As Central is in the business of highway construction and construction sites are necessarily on or immediately adjacent to "public ways," this policy would have no value to Central if it were construed as excluding liability for injuries which happen to occur on the adjacent "public ways." The more reasonable interpretation of this exclusion is that it was intended to exclude liability of Bituminous for occurrences involving vehicles traveling on streets, highways, and other "public ways" to and from the construction sites.

For the reasons stated, we hold the Bituminous policy furnished primary insurance coverage for the occurrence, with liability measured by its policy limits of $50,000. As the Hartford policy furnished *excess coverage only,* it follows that as Bituminous has paid $42,500 of its coverage, it should pay the additional $7500 to Hartford to reimburse Hartford for its settlement overpayment.

In accordance with the conclusions of this court, and pursuant to the authority given to this court in section 92(1)(e) of the Civil Practice Act (Ill Rev

Stats 1963, c 110), it is ordered that the part of the judgment order appealed from which provides "that the payments of parties heretofore made should stand as their respective contributions to said settlement," is reversed and judgment be and it is hereby entered against Bituminous Casualty Corporation, plaintiff, and in favor of Hartford Accident & Indemnity Company, defendant, in the amount of $7500, with the costs of the proceedings to be divided equally between them.

Affirmed in part, reversed in part and judgment entered here.

BURMAN and KLUCZYNSKI, JJ., concur.